Slip Op. 18-102

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **MONDIV, DIV. OF LASSONDE SPECIALTIES INC.,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>        **Defendant.** | **Before: Jennifer Choe-Groves, Judge**<br><br>**Court No. 16-00038** |

### OPINION

[Granting Plaintiff's motion for summary judgment and denying Defendant's cross-motion for summary judgment.]

Dated: August 16, 2018

John M. Peterson and Russell A. Semmel, Neville Peterson, LLP, of New York, N.Y., argued for Plaintiff Mondiv, Division of Lassonde Specialties Inc.  Of counsel was Maria E. Celis. Caroline Lemoine, General Counsel for Industries Lassonde, also appeared.

Peter A. Mancuso, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., argued for Defendant United States.  With him on the brief were Chad A. Readler, Acting Assistant Attorney General, Amy M. Rubin, Assistant Director, International Trade Field Office, and Stephen A. Josey, Trial Attorney, Commercial Litigation Branch, Civil Division.  Of counsel was Alexandra Khrebtukova, U.S. Customs and Border Protection.  Alexander J. Vanderweide, Trial Attorney, Commercial Litigation Branch, Civil Division, also appeared.

    Choe-Groves, Judge:  This case addresses whether artichoke antipasto and green olive

tapenade are "other vegetables prepared or preserved" or "sauces" under the Harmonized Tariff

Schedule of the United States ("HTSUS") (2013).  Before the court are cross-motions for

summary judgment in this classification dispute.  See Revised Pl.'s Mot. Summ. J., Oct. 19,

2017, ECF No. 46; Revised Pl. Mem. Supp. Mot. Summ. J., Oct. 19, 2017, ECF No. 47 ("Pl.

Br."); Def.'s Cross-Mot. Summ. J., Nov. 8, 2017, ECF No. 48; Nonconfidential Mem. Supp.

Def.'s Cross-Mot. Summ. J. & Resp. Pl.'s Mot. Summ. J., Nov. 8, 2017, ECF No. 48-3 ("Def.

Br.").  For the reasons discussed below, the court grants Plaintiff's motion for summary

judgment and denies Defendant's cross-motion for summary judgment.

        Mondiv, Division of Lassonde Specialties Inc. ("Plaintiff" or "Mondiv") argues that U.S.

Customs and Border Protection ("Customs") improperly denied its protests challenging the

classification of its imported artichoke antipasto and green olive tapenade merchandise.  See Pl.

Br. 3–5.  Plaintiff contends that all of its products are classifiable under HTSUS Subheading

2103.90.90, which covers "[s]auces and preparations therefore; mixed condiments and mixed

seasonings; mustard flour and meal and prepared mustard: Other: Other."  See id. at 5–16.

Plaintiff asserts that certain entries of its products are entitled to duty-free treatment because

products classifiable under HTSUS Subheading 2103.90.90 are eligible for North American Free

Trade Agreement ("NAFTA") Rule of Origin Preference.  See id. at 33–34.

        The United States ("Defendant" or "Government") maintains that Customs properly

classified the imported artichoke antipasto as "other vegetables prepared or preserved" under

HTSUS Subheading 2005.99.80, dutiable at 14.9% *ad valorem*, and the imported green olive

tapenade as "other vegetables prepared or preserved" under HTSUS Subheading 2005.99.97,

dutiable at 11.2% *ad valorem*.  See Def. Br. 4.

        The court held oral argument on April 18, 2018.  See Oral Argument, Apr. 18, 2018, ECF

No. 65.  The Government submitted a letter six days after oral argument objecting to Plaintiff's

introduction of certain demonstrative exhibits during oral argument, including jars of salsa,

relish, pesto, hummus, and bean dip.  Notice of Obj., Apr. 24, 2018, ECF No. 67.  The court

denies this objection as untimely because Defendant should have raised it during oral argument.

Moreover, the court is permitted to consult reliable sources of information, including

demonstrative exhibits, in determining the common meaning of a term.  See Carl Zeiss, Inc. v.

United States, 195 F.3d 1375, 1379 (Fed. Cir. 1999).

## ISSUES PRESENTED

The court considers two issues:

1.      Do the undisputed facts establish that Plaintiff's artichoke antipasto and green
        olive tapenade are classifiable as "other vegetables prepared or preserved"?

2.      Do the undisputed facts establish that Plaintiff's artichoke antipasto and green
        olive tapenade are classifiable as "sauces"?

For the reasons discussed below, the court concludes that (1) Plaintiff's products are

*prima facie* classifiable as "other vegetables prepared or preserved," (2) Plaintiff's products are

*prima facie* classifiable as "sauces," (3) Plaintiff's products are properly classified as "sauces"

under the rule of relative specificity, and (4) certain entries of Plaintiff's products are entitled to

duty-free treatment under NAFTA Rule of Origin Preference.

## UNDISPUTED FACTS

The following facts are not in dispute.

### A.      Jurisdictional and Procedural Facts

Mondiv is the importer of record for artichoke antipasto and green olive tapenade

merchandise imported into the United States between 2013 and 2014.  Summons ¶¶ 1, 3–5, Mar.

01, 2016, ECF No. 1 ("Summons").  Customs determined that the artichoke antipasto

merchandise was classifiable at a duty rate of 14.9% *ad valorem* under HTSUS Subheading

2005.99.80 as "Other vegetables prepared or preserved otherwise than by vinegar or acetic acid,

not frozen, other than products of heading 2006: Other vegetables and mixtures of vegetables:

Other: Artichokes."  Pl.'s Statement Facts Supp. Mot. Summ. J. ¶ 16, Oct. 19, 2017, ECF No.

46-1 ("Pl. Facts"); Resps. Pl.'s Statement Facts ¶ 16, Nov. 8, 2017, ECF No. 48-1 ("Def. Facts

Resp."); see also Summons; Compl. ¶ 27, June 11, 2016, ECF No. 11 ("Compl."); Answer ¶ 27,

Sep. 21, 2016, ECF No. 17 ("Answer").  Customs determined that the green olive tapenade

merchandise was classifiable at a duty rate of 11.2% *ad valorem* under HTSUS Subheading

2005.99.97 as "Other vegetables prepared or preserved otherwise than by vinegar or acetic acid,

not frozen, other than products of heading 2006: Other vegetables and mixtures of vegetables:

Other: Other."  Pl. Facts ¶ 9; Def. Facts Resp. ¶ 9; see also Summons; Compl. ¶ 26; Answer ¶ 26.

Plaintiff filed timely protests contesting the classification of the artichoke antipasto and

green olive tapenade merchandise.  See Def.'s Nonconfidential Statement Undisputed Material

Facts ¶ 3, Nov. 8, 2017, ECF No. 48-2 ("Def. Facts"); Pl.'s Resp. Def.'s Statement Facts ¶ 3,

Dec. 13, 2017, ECF No. 56-1 ("Pl. Facts Resp.").  All seven of Plaintiff's protests were deemed

denied by Customs.  See Summons; Compl. ¶ 5; Answer ¶ 5.  Plaintiff filed a claim for

preferential duty treatment under NAFTA for artichoke antipasto entered under cover of Entry

No. M767443196-2 and green olive tapenade entered under cover of Entry No. M762050259-3.

Def. Facts ¶ 5; Pl. Facts Resp. ¶ 5.  The entries were liquidated and Mondiv paid all duties,

charges, and exactions.  Def. Facts ¶ 4; Pl. Facts Resp. ¶ 4.  Plaintiff commenced this action

thereafter.  See Summons; Compl.

**B.      Facts Regarding Plaintiff's Products**

Plaintiff's artichoke antipasto consists of quartered artichokes, artichoke juice, canola oil, water, parsley, ground garlic, extra virgin olive oil, salt, white vinegar, dehydrated oregano, and dehydrated basil.  Pl. Facts ¶ 10; Def. Facts Resp. ¶ 10.  The artichokes are drained and ground into halves, then combined with the other ingredients.  Pl. Facts ¶ 11; Def. Facts Resp. ¶ 11. This combination is added to a food processor.  Pl. Facts ¶ 11; Def. Facts Resp. ¶ 11. The antipasto is cooked, packaged, and then rendered commercially sterile after being cooked again in a retort process, with the result sold as-is without the intention that it will undergo further processing by the purchaser.  Pl. Facts ¶ 11; Def. Facts Resp. ¶ 11; Def. Facts ¶ 60; Pl. Facts Resp. ¶ 60.  The finished product is intended to be chunky with easily visible pieces of artichoke. Def. Facts ¶¶ 13–14; Pl. Facts Resp. ¶¶ 13–14.

Plaintiff's green olive tapenade consists of preserved sliced green olives, diced tomatoes, diced red peppers, water, diced carrots, diced onions, canola oil, ground garlic, Dijon mustard, salt, lemon juice concentrate, Italian seasoning, and dehydrated basil.  Pl. Facts ¶ 2; Def. Facts Resp. ¶ 2.  The green olive tapenade is prepared by blending the ingredients with salt water and canola oil in a hot food processor and then cooking the mixture.  Pl. Facts ¶ 3; Def. Facts Resp. ¶ 3.  After cooking, the tapenade is packaged and then rendered commercially sterile after being cooked again in a retort process.  Pl. Facts ¶ 3; Def. Facts Resp. ¶ 3.  Mondiv does not puree the green olive tapenade to maintain the product's chunky consistency.  Def. Facts ¶ 20; Pl. Facts Resp. ¶ 20.  The resulting tapenade is sold as-is without the intent of further processing by the purchaser.  Def. Facts ¶ 60; Pl. Facts Resp. ¶ 60.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (2012) and 19 U.S.C. § 1515. The court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." USCIT R. 56(a). To raise a genuine issue of material fact, a party cannot rest upon mere allegations or denials and must point to sufficient supporting evidence for the claimed factual dispute to require resolution of the differing versions of the truth at trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986); Processed Plastics Co. v. United States, 473 F.3d 1164, 1170 (Fed. Cir. 2006); Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd., 731 F.2d 831, 835–36 (Fed. Cir. 1984).

## ANALYSIS

### A.      Legal Framework

A two-step process guides the court in determining the correct classification of merchandise. First, the court ascertains the proper meaning of the terms in the tariff provision. See Schlumberger Tech. Corp. v. United States, 845 F.3d 1158, 1162 (Fed. Cir. 2017) (citing Sigma-Tau HealthScience, Inc. v. United States, 838 F.3d 1272, 1276 (Fed. Cir. 2016)). Second, the court determines whether the merchandise at issue falls within the parameters of the tariff provision. See id. The former is a question of law and the latter is a question of fact. See id. "[W]hen there is no dispute as to the nature of the merchandise, then the two-step classification analysis 'collapses entirely into a question of law.'" Link Snacks, Inc. v. United States, 742 F.3d 962, 965–66 (Fed. Cir. 2014) (quoting Cummins Inc. v. United States, 454 F.3d 1361, 1363 (Fed. Cir. 2006)).

The court reviews classification cases *de novo*.  See 28 U.S.C. § 2640(a)(1).  Customs is

afforded a statutory presumption of correctness in classifying merchandise under the HTSUS,

but this presumption does not apply to pure questions of law.  See Universal Elecs. Inc. v. United

States, 112 F.3d 488, 492 (Fed. Cir. 1997).  The court has an independent responsibility to decide

the legal issue of the proper meaning and scope of HTSUS terms, Warner-Lambert Co. v. United

States, 407 F.3d 1207, 1209 (Fed. Cir. 2005), and therefore must determine "whether the

government's classification is correct, both independently and in comparison with the importer's

alternative."  Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984).

The classification of merchandise under the HTSUS is governed by the General Rules of

Interpretation ("GRIs") and, if applicable, the Additional U.S. Rules of Interpretation, which are

both applied in numerical order.  BenQ Am. Corp. v. United States, 646 F.3d 1371, 1376 (Fed.

Cir. 2011) (citing N. Am. Processing Co. v. United States, 236 F.3d 695, 698 (Fed. Cir. 2001)).

GRI 1 instructs that, "for legal purposes, classification shall be determined according to the terms

of the headings and any relative section or chapter notes."  GRI 1.  "Absent contrary legislative

intent, HTSUS terms are to be 'construed [according] to their common and popular meaning.'"

Baxter Healthcare Corp. of P.R. v. United States, 182 F.3d 1333, 1337 (Fed. Cir. 1999) (quoting

Marubeni Am. Corp. v. United States, 35 F.3d 530, 534 (Fed. Cir. 1994)).

In construing the terms of the headings, "[a] court may rely upon its own understanding

of the terms used and may consult lexicographic and scientific authorities, dictionaries, and other

reliable information sources."  Carl Zeiss, Inc., 195 F.3d at 1379 (citing Baxter Healthcare Corp.

of P.R., 182 F.3d at 1337–38).  The court may also consult the Harmonized Commodity

Description and Coding System's Explanatory Notes ("Explanatory Notes"), which "are not

legally binding or dispositive," <u>Kahrs Intern., Inc. v. United States</u>, 713 F.3d 640, 645 (Fed. Cir.

2013), but "provide a commentary on the scope of each heading of the Harmonized System" and

are "generally indicative of proper interpretation of the various provisions."  H.R. Rep. No. 100–

576, 549 (1988), <u>reprinted in</u> 1988 U.S.C.C.A.N. 1547, 1582; <u>see also</u> <u>E.T. Horn Co. v. United</u>

<u>States</u>, 367 F.3d 1326, 1329 (Fed. Cir. 2004).  Tariff terms are defined according to the language

of the headings, the relevant section and chapter notes, the Explanatory Notes, available

lexicographic sources, and other reliable sources of information.

**B.    Analysis of the Products Under HTSUS Heading 2005**

The first issue concerns whether Plaintiff's artichoke antipasto and green olive tapenade

products are *prima facie* classifiable under HTSUS Heading 2005 as "other vegetables prepared

or preserved."  HTSUS Heading 2005 reads as follows, "[o]ther vegetables prepared or

preserved otherwise than by vinegar or acetic acid, not frozen, other than products of heading

2006."  Heading 2005, HTSUS.

The court must assess whether HTSUS Heading 2005 is an *eo nomine* provision or a use

provision at the outset, as that distinction guides the analysis.  <u>See</u> <u>Schlumberger Tech Corp.</u>,

845 F.3d at 1164.  An *eo nomine* provision describes articles by specific names, while a use

provision characterizes products based on their principal or actual use.  <u>See</u> <u>id.</u>; <u>see also</u> <u>R.T.</u>

<u>Foods, Inc. v. United States</u>, 757 F.3d 1349, 1354 (Fed. Cir. 2014).  The court construes HTSUS

Heading 2005 as an *eo nomine* classification provision because it names specific products.

A plain reading of HTSUS Heading 2005 reveals that products classifiable under the

heading must satisfy five criteria: they must be (1) "other vegetables," (2) "prepared or

preserved," (3) "otherwise than by vinegar or acetic acid," (4) "not frozen," and (5) "other than

products of heading 2006." Heading 2005, HTSUS. The court begins its analysis with the heading's terms.

### 1. Other Vegetables

First, the court examines the term "other vegetables." Note 3 of Chapter 20 of the HTSUS states that Heading 2005 covers "only those products of chapter 7 . . . which have been prepared or preserved by processes other than those referred to in note 1(a)." Note 3 to Chapter 20, HTSUS. Chapter 7 includes potatoes, tomatoes, onions, shallots, garlic, leeks and other alliaceous vegetables, cabbages, cauliflower, kohlrabi, kale and similar edible brassicas, lettuce (*Lactuca sativa*), chicory (*Cichorium spp.*), carrots, turnips, salad beets (salad beetroot), salsify, celeriac, radishes and similar edible roots, cucumbers, gherkins, leguminous vegetables, asparagus, eggplants, celery, mushrooms, truffles, fruits of the genus *Capsicum* (peppers) and of the genus *Pimenta* (e.g., allspice), spinach, New Zealand spinach, orache spinach (garden spinach), globe artichokes, olives, pumpkins, squash, gourds (*Curcubita* spp.), jicamas, breadfruit, chayote (*Sechium edule*), okra, fiddlehead greens, sweet corn, fennel, marjoram, parsley, savory, tarragon, capers, bamboo shoots, water chestnuts, wood ears (*Auricularia spp.*), jelly fungi (*Tremella spp.*), cassava (manioc), arrowroot, salep, Jerusalem artichokes, and sweet potatoes and similar roots and tubers with high starch or inulin content. See Chapter 7, HTSUS. Because the controlling chapter note defines the relevant vegetables as those listed in Chapter 7, the court recognizes that these same vegetables are incorporated into HTSUS Heading 2005. To satisfy the first requirement of HTSUS Heading 2005, the vegetable in question must be included in the Chapter 7 list of covered vegetables.

The undisputed facts establish that artichokes and artichoke juice constitute the principal ingredients of the artichoke antipasto.  See Pl. Facts ¶ 11; Def. Facts Resp. ¶ 11.  Artichokes are listed in HTSUS Chapter 7 and therefore are a covered vegetable of HTSUS Heading 2005.  The court concludes that the artichoke antipasto is primarily made of artichoke, a covered vegetable in Chapter 7, and therefore satisfies the first requirement of HTSUS Heading 2005.

The green olive tapenade is a mixture of green olives, tomatoes, red peppers, carrots, and onions, which constitute a combined majority of the product according to undisputed facts.  See Pl. Facts ¶ 3; Def. Facts Resp. ¶ 3.  Olives, tomatoes, peppers, carrots, and onions are listed in HTSUS Chapter 7 and are covered vegetables of HTSUS Heading 2005.  The court determines that Plaintiff's green olive tapenade is made of covered vegetables in Chapter 7, and therefore satisfies the first requirement of HTSUS Heading 2005.

### 2.  Prepared or Preserved

Second, the court examines the terms "prepared or preserved."  The text of HTSUS Heading 2005 does not define the phrase "prepared or preserved," thus the court looks to common dictionary definitions.  Oxford Dictionary defines "prepare" as to "[m]ake (food or a meal) ready for cooking or eating."  Prepare, Oxford Dictionary, available at https://en.oxforddictionaries.com/definition/prepare (last visited Aug. 7, 2018).  Merriam-Webster Dictionary defines "prepare" as "to make ready beforehand for some purpose, use, or activity – prepare food for dinner."  Prepare, Merriam-Webster Dictionary, available at https://www.merriam-webster.com/dictionary/prepare (last visited Aug. 7, 2018).  Merriam-Webster Dictionary defines "prepared" as "subjected to a special process or treatment."  Prepared, Merriam-Webster Dictionary, available at https://www.merriam-

webster.com/dictionary/prepared (last visited Aug. 7, 2018).  The second definition for

"preserved" is to "[t]reat (food) to prevent its decomposition."  Preserve, Oxford Dictionary,

available at https://en.oxforddictionaries.com/definition/preserve (last visited Aug. 7, 2018).

Merriam-Webster Dictionary defines "preserve" as "to keep or save from decomposition" or "to

can, pickle, or similarly prepare for future use."  Preserve, Merriam-Webster Dictionary,

available at https://www.merriam-webster.com/dictionary/preserved (last visited Aug. 7, 2018).

The court concludes that the terms "prepared or preserved" within the context of HTSUS

Heading 2005 mean that the food must be ready for cooking or eating, or treated to prevent its

decomposition.

     The undisputed facts establish that Plaintiff made its artichoke antipasto and green olive

tapenade according to specific recipes that created sterilized, ready to eat products.  Pl. Facts ¶ 3,

11; Def. Facts Resp. ¶ 3, 11; Def. Facts ¶ 60; Pl. Facts Resp. ¶ 60.  Because the artichoke

antipasto and green olive tapenade are sterilized to prevent decomposition and are ready for

cooking or eating as-is out of the jar, the court concludes that the products are prepared and

preserved within the meaning of HTSUS Heading 2005.

### 3.  Otherwise Than by Vinegar or Acetic Acid

     Third, HTSUS Heading 2005 requires that the preparation or preservation be completed

"otherwise than by vinegar or acetic acid."  Preservation by means of vinegar or acetic acid is

commonly referred to as pickling.  See Fennema's Food Chemistry 821 (Srinivasan Damodaran

& Kirk L. Parkin eds., 5th ed. 2017); Encyclopedia of Food Sciences and Nutrition 6003

(Benjamin Caballero et al. eds., 2nd ed. 2003).  The third requirement of Heading 2005 requires

that the product be prepared or preserved by means *other* than pickling.  Culinary reference

books discuss numerous ways to prepare or preserve food that do not involve pickling.  For example:

> Thermal processing of food materials is one of the most widely used methods of food preservation.  Foods may be thermally processed using *numerous heating systems such as retorts (batch or continuous)*, direct heating systems (steam injection or steam infusion), indirect heating systems (tubular heat exchangers, shell and tube heat exchangers, plate heat exchangers, scraped surface heat exchangers), volumetric heating systems (microwave or ohmic heating), and combinations of these.

Prabhat Kumar & K.P. Sandeep, *Thermal Principles and Kinetics*, *in* FOOD PROCESSING: PRINCIPLES AND APPLICATIONS 17, 17 (Stephanie Clark, Stephanie Jung & Buddhi Lamsal eds., 2nd ed. 2014) (emphasis added).  The court concludes that the third factor of HTSUS Heading 2005 requires that the food must be prepared or preserved by a method other than pickling.

The undisputed facts confirm that Plaintiff prepared its artichoke antipasto and green olive tapenade products using a retort process for sterilization.  Pl. Facts ¶¶ 3, 11; Def. Facts Resp. ¶¶ 3, 11.  As noted above, a retort process uses thermal systems for preservation.  The undisputed facts establish that neither the artichoke antipasto nor the green olive tapenade are prepared or preserved using vinegar or acetic acid.  Pl. Facts ¶ 18; Def. Facts Resp. ¶ 18.  The court concludes that Plaintiff's artichoke antipasto and green olive tapenade are not prepared or preserved using vinegar or acetic acid and therefore satisfy the third requirement of HTSUS Heading 2005.

### 4. Not Frozen

Fourth, HTSUS Heading 2005 requires that the product is "not frozen."  The Explanatory Notes to the HTSUS define "frozen" as when a "product has been cooled to below the product's freezing point until it is frozen throughout."  General Explanatory Note to Chapter 7, HTSUS;

see also Explanatory Note to Heading 2004, HTSUS ("The frozen vegetables of this heading are

those which fall in heading 20.05 when not frozen . . . . The term 'frozen' is defined in the

General Explanatory Note to Chapter 7.").  The court will apply the common meaning of not

frozen for the fourth requirement of HTSUS Heading 2005.

The undisputed facts confirm that neither the artichoke antipasto nor the green olive

tapenade were frozen within the meaning of HTSUS Heading 2004.  Pl. Facts ¶ 20; Def. Facts

Resp. ¶ 20.  The court concludes that Plaintiff's artichoke antipasto and green olive tapenade

products satisfy the fourth requirement under HTSUS Heading 2005.

**5.  Other Than Products of Heading 2006**

Fifth, HTSUS Heading 2005 specifies that the tariff heading encompasses products

"other than products of heading 2006."  Heading 2006 covers "[v]egetables, fruit, nuts, fruit-peel

and other parts of plants preserved by sugar (drained, glacé or crystallized)."  Heading 2006,

HTSUS.  The decisive characteristic of HTSUS Heading 2006 is preservation using sugar.  The

court construes the meaning of Heading 2005 to require that classifiable products are not

preserved by sugar.

The undisputed facts confirm that neither Plaintiff's artichoke antipasto nor green olive

tapenade were preserved by sugar within the meaning of Heading 2006.  See Pl. Facts ¶ 18; Def.

Facts Resp. ¶ 18.  The court finds that both products satisfy the fifth requirement under HTSUS

Heading 2005.

To summarize, in order to be classifiable under Heading 2005, the court interprets the

terms of the tariff heading to require that the subject entries must be (1) vegetables listed in

Chapter 7; (2) ready for cooking or eating, or treated to prevent its decomposition; (3) preserved

by a means other than pickling in vinegar or acetic acid; (4) not frozen; and (5) not preserved

with sugar.  For the foregoing reasons, the court finds that Plaintiff's artichoke antipasto and

green olive tapenade are *prima faci*e classifiable under HTSUS Heading 2005.

### 6. Substantial Transformation

Plaintiff contends that its artichoke and olive products were substantially transformed so

as to remove them from Heading 2005.  Under the substantial transformation doctrine, a product

can differ so significantly that it can no longer be properly classified within the provision.  See

R.T. Foods, 757 F.3d at 1356; CamelBak Prods., LLC v. United States, 649 F.3d 1361, 1364

(Fed. Cir. 2011).  In determining whether a product has undergone a substantial transformation,

the court may examine factors such as the design, use, and function of the merchandise.  See

R.T. Foods, 757 F.3d at 1356 (citing CamelBak, 649 F.3d at 1367).

With respect to Plaintiff's artichoke antipasto and green olive tapenade products, Plaintiff

argues that the extensive processing and addition of numerous ingredients to the vegetables

changes the essential character of the vegetables in these products, making them more than mere

"prepared or preserved" vegetables under HTSUS Heading 2005.  See Pl. Br. 16.  Examining the

design, use, and function of the products under the applicable legal standard, the court finds that

the cooking, sterilizing, chopping, and adding of vinegar, oil, garlic, salt water, parsley, oregano,

basil, and other ingredients provide seasonings and flavors, but do not change their essence from

predominantly artichoke and olive products to make them new items.  See CamelBak, 649 F.3d

at 1367; see also Orlando Food Corp. v. United States, 140 F.3d 1437, 1439–41 (Fed. Cir. 1998)

("finding that pureed tomato product was not substantially transformed by the addition of

incidental ingredients that do not affect the essential character of the product").  The court

concludes that Plaintiff's products are essentially seasoned, chopped, and processed artichokes and olives, albeit with added spices and oils to give the products a finished, distinct flavor, texture, and use, and have not been substantially transformed to render the products not properly classifiable under HTSUS Heading 2005.

To summarize, the court concludes that the artichoke antipasto and green olive tapenade products were made from: (1) covered vegetables, (2) prepared or preserved, (3) otherwise than by vinegar or acetic acid, (4) not frozen, and (5) not preserved using sugar. The court finds that the essential nature of the artichoke and olive products were not transformed into new and completely different products. The artichoke antipasto and green olive tapenade are *prima facie* classifiable, therefore, under HTSUS Heading 2005.

## C.    Analysis of the Products Under HTSUS Heading 2103

The second issue under consideration is whether Plaintiff's artichoke antipasto and green olive tapenade are classifiable as "sauces" under HTSUS Heading 2103. HTSUS Heading 2103 reads as follows, "[s]auces and preparations therefore; mixed condiments and mixed seasonings; mustard flour and meal and prepared mustard." Heading 2103, HTSUS.

The court considers "sauces" under HTSUS Heading 2103 an *eo nomine* classification provision because it names a specific product. The court begins its analysis with the meaning of the heading's term. "Sauce" is not defined within HTSUS Heading 2103, thus the court consults various informative sources to ascertain the meaning of the tariff heading. Merriam-Webster Dictionary defines "sauce" as "1. a condiment or relish for food, *especially* a fluid dressing or topping; 2. something that adds zest or piquancy." Sauce, Merriam-Webster Dictionary, available at https://www.merriam-webster.com/dictionary/sauce (last visited Aug. 7, 2018). The

American Heritage Dictionary of the English Language defines "sauce" as: "1. A flavorful liquid or semisolid condiment or mixture of ingredients served as a topping or other accompaniments of food . . . 3. Something that adds zest, flavor, or piquancy." Sauce, American Heritage Dictionary of the English Language, available at https://ahdictionary.com/word/search.html?q=sauce (last visited Aug. 7, 2018). The Professional Chef by the Culinary Institute of America defines "sauce" as "a liquid accompaniment to food, used to enhance the flavor of the food." The Culinary Institute of America, The Professional Chef 1185 (8th ed. 2006). Based on these reference sources, the court determines that the term "sauce" used in HTSUS Heading 2103 denotes a mixture of ingredients in liquid or semisolid form that adds flavoring to food.

The Explanatory Notes for HTSUS Heading 2103 provide further guidance, noting that, "Sauces are normally added to a food as it cooks or as it is served. Sauces provide flavor, moisture, and a contrast in texture and colour. They may also serve as a medium in which food is contained, for example, the velouté sauce of creamed chicken." Explanatory Note to Heading 2103(A), HTSUS. The Explanatory Note supports the court's interpretation of "sauce" under HTSUS Heading 2103.

The court's inquiry focuses on whether Plaintiff's artichoke antipasto and green olive tapenade are mixtures of ingredients in liquid or semisolid form that add flavoring to food.

First, with respect to whether the products are a mixture of ingredients in liquid or semisolid form, the undisputed facts establish that the artichoke antipasto and green olive tapenade are chunky mixtures of ingredients with discernable pieces of vegetables. Pl. Facts ¶ 13; Def. Facts Resp. ¶ 13; Def. Facts ¶¶ 13–14, 19; Pl. Facts Resp. ¶¶ 13–14, 19. The court finds that "chunky" mixtures are semisolid in form, rather than liquid or solid. Because the

undisputed facts establish that both products are chunky mixtures of ingredients, the court finds

that the artichoke antipasto and green olive tapenade satisfy the "semisolid" requirement to be a

sauce under HTSUS Heading 2103.

Second, with respect to whether the artichoke antipasto and green olive tapenade add

flavoring to food, the ingredients suggest that the products contribute flavor when added to food.

It is undisputed that the artichoke antipasto consists of quartered artichokes, artichoke juice,

canola oil, water, parsley, ground garlic, extra virgin olive oil, salt, white vinegar, dehydrated

oregano, and dehydrated basil.  Pl. Facts ¶ 10; Def. Facts Resp. ¶ 10.  The Parties do not dispute

the ingredients of the artichoke antipasto.  The court finds that these combined ingredients in

Mondiv's artichoke antipasto, namely quartered artichokes, artichoke juice, canola oil, parsley,

ground garlic, extra virgin olive oil, salt, white vinegar, dehydrated oregano, and dehydrated

basil, together impart flavor when added to food.  The court concludes, therefore, that the

undisputed facts establish that Mondiv's artichoke antipasto satisfies the second requirement that

the product must add flavoring to food to be considered a sauce under HTSUS Heading 2103.

It is undisputed that Plaintiff's green olive tapenade consists of preserved sliced green

olives, diced tomatoes, diced red peppers, water, diced carrots, diced onions, canola oil, ground

garlic, Dijon mustard, salt, lemon juice concentrate, Italian seasoning, and dehydrated basil.  Pl.

Facts ¶ 2; Def. Facts Resp. ¶ 2.  The Parties do not dispute the ingredients of the green olive

tapenade.  The court finds that these ingredients in Mondiv's green olive tapenade, namely

preserved sliced green olives, diced tomatoes, diced red peppers, diced carrots, diced onions,

canola oil, ground garlic, Dijon mustard, salt, lemon juice concentrate, Italian seasoning, and

dehydrated basil, together impart flavor when added to food.  The court concludes, therefore, that

the undisputed facts establish that Mondiv's green olive tapenade satisfies the second

requirement that the product must add flavoring to food to be considered a sauce under HTSUS

Heading 2103.

The court concludes that Plaintiff's artichoke antipasto and green olive tapenade products

are *prima facie* classifiable as sauces under HTSUS Heading 2103 because both products are

mixtures of ingredients in semisolid form that add flavoring to food.

**D.      Analysis Under GRI 3(a)**

Plaintiff's artichoke antipasto and green olive tapenade products are *prima facie*

classifiable under both HTSUS Headings 2005 and 2103.  According to GRI 3(a), when a

product is *prima facie* classifiable under two or more headings, the "heading which provides the

most specific description shall be preferred to headings providing a more general description."

GRI 3(a); see also Orlando Food Corp., 140 F.3d at 1441.  Under the rule of relative specificity,

the court looks to the heading which is more difficult to satisfy and that describes the article with

the greatest degree of accuracy and certainty.  Orlando Food Corp., 140 F.3d at 1441.  The

requirements of the sauce provision are more difficult to satisfy because preparing a sauce

involves some degree of processing or adding ingredients.  The sauce provision requires

processing of ingredients to make a liquid or semisolid substance, and requires the addition of

numerous ingredients that together would enhance the flavor of food.  For these reasons, the

court concludes that under the rule of relative specificity, HTSUS Heading 2103 for sauces is

more specific than HTSUS Heading 2005 for prepared and preserved vegetables.  Mondiv's

products are properly classified under the HTSUS Heading 2103 as "sauces."

E.      **Analysis Under GRI 6**

After the proper heading of the product is determined, the court utilizes GRI 6 to

determine the appropriate subheading.  GRI 6 states, "the classification of goods in the

subheadings of a heading shall be determined according to the terms of those subheadings . . . on

the understanding that only subheadings at the same level are comparable."  GRI 6; see also Well

Luck Co., Inc. v. United States, 887 F.3d 1106, 1117 (Fed. Cir. 2018).

The products are classifiable under HTSUS Heading 2103.  Based on the ingredients,

neither the artichoke antipasto nor the green olive tapenade are classifiable under the six-digit

subheadings encompassing "soy sauce," "tomato, ketchup and other tomato sauces," or "mustard

flour and meal and prepared mustard."  See Subheadings 2103.10, 2310.20, 2310.30, HTSUS.

The court turns to HTSUS Subheading 2103.90, which covers "other."  See Rollerblade, Inc. v.

United States, 282 F.3d 1349, 1354 (Fed. Cir. 2002) (stating that when a product is not

classifiable under a specific subheading, it is proper to use the heading's "basket" provision);

Well Luck Co., 887 F.3d at 1117 (explaining that a product that is not classifiable under a

specific subheading is properly classified under the "[o]ther" subheading).  HTSUS Heading

2103.90 lists several categories on the eight-digit level.  The court finds that none of the eight-

digit subheadings cover the subject merchandise and that the "Other" provision of HTSUS

Heading 2103.90.90 is applicable.  The court concludes that both the artichoke antipasto and

green olive tapenade are properly classifiable under HTSUS Subheading 2103.90.90.

**F.      Duty-Free Treatment Under NAFTA Rule of Origin Preference**

Under the NAFTA Preference Rule of Origin in the HTSUS, certain products are entitled

to duty-free treatment if they originate in Canada.  See General Note 12, HTSUS.  The provision

states, in relevant part:

> (b) For the purposes of this note, goods imported into the customs territory of the
> United States are eligible for the tariff treatment and quantitative limitations
> set forth in the tariff schedule as "goods originating in the territory of a
> NAFTA party" only if--
>
> . . . .
>
> > (ii) they have been transformed in the territory of Canada, Mexico and/or the
> > United States so that--
> >
> > . . . .
> >
> > > (A) . . . each of the non-originating materials used in the production of such
> > > goods undergoes a change in tariff classification described in
> > > subdivisions (r), (s), and (t) of this note or the rules set forth therein . . . .

General Note 12(b)(ii)(A), HTSUS (emphasis omitted).

Plaintiff asserts that Entry Nos. M762050259-3 and M767443196-2, entered at the Port

of St. Albans, Vermont, are entitled to duty-free treatment as NAFTA-originating products.  See

Pl. Br. 33.  The court finds that Plaintiff's two entries are entitled to duty-free treatment under

NAFTA Rule of Origin Preference because the goods were subject to a change in tariff

classification under the HTSUS.  Defendant agrees that if the court finds that Plaintiff's products

are classifiable under HTSUS Heading 2103, then the products entered at the Port of St. Albans,

Vermont are entitled to duty-free treatment.  See Oral Argument at 1:20:02–1:20:26, Apr. 18,

2018, ECF No. 65.  The court concludes that Entry Nos. M762050259-3 and M767443196-2 are

entitled to duty-free treatment under NAFTA Rule of Origin Preference.

## CONCLUSION

For the foregoing reasons, the court concludes that:

1.      The undisputed facts establish that Plaintiff's artichoke antipasto and green olive tapenade products are *prima facie* classifiable as "other vegetables prepared or preserved" under HTSUS Heading 2005;

2.      The undisputed facts establish that Plaintiff's artichoke antipasto and green olive tapenade products are *prima facie* classifiable as "sauces" under HTSUS Heading 2103.  Under the rule of specificity, Plaintiff's products are properly classified as "sauces" under HTSUS Heading 2103;

3.      Plaintiff's products are properly classifiable under HTSUS Subheading 2103.90.90.  The court grants Plaintiff's motion for summary judgment and denies Defendant's cross-motion for summary judgment;

4.      The court concludes that certain entries of Plaintiff's products are eligible for duty-free treatment under NAFTA.

Judgment will be entered accordingly.


                                                              /s/    Jennifer Choe-Groves
                                                               Jennifer Choe-Groves, Judge


Dated: August 16, 2018
          New York, New York